UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH KENNARD,<br><br>    Plaintiff,<br><br>v.<br><br>KAISER PERMANENTE,<br><br>    Defendant. | Case No. 17-cv-03262-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Keith Kennard brings employment discrimination claims against his former employer, Kaiser Permanente (Kaiser), under Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), and the Genetic Information Nondiscrimination Act (GINA), and a number of state claims. He filed his EEOC charge on February 28, 2017 and did not allege any discriminatory conduct within 300 days of that date, which is not surprising since he was terminated on May 20, 2014. His federal claims are untimely and will be dismissed with prejudice as equitable tolling does not apply. I decline to exercise supplemental jurisdiction over the state claims. For the reasons discussed below, I GRANT Kaiser's motion to dismiss Kennard's First Amended Complaint (FAC).

**BACKGROUND**

Kennard began work for Kaiser part-time in 2007 and was hired full-time in 2008.[1] FAC

---

[1] Prior to his employment and throughout the course of his employment with Kaiser, Kennard sought treatment from several doctors who diagnosed him with different types of mental health issues (depression, anxiety, posttraumatic stress disorder, and a mood disorder), chemical dependency, and substance abuse. In his FAC, Kennard sometimes disputes these diagnoses – asserting they were made without proper testing or understanding of his background and traumatic head injuries – while sometimes agreeing with the doctors' diagnosis. *See, e.g.*, FAC ¶¶ 9, 10, 22, 28, 34, 112 (Dkt. No. 8). As described in more detail below, Kennard alleges that Kaiser misused his health records during the course of his employment and during his workers compensation

¶ 7. In his position as a consulting data analyst, he was the only African American programmer. *Id.* In July 2008, Kennard suffered a concussion and a traumatic brain injury as a result of a physical assault. *Id.* ¶ 17. After a brief medical leave, he returned to work in September 2008. *Id.* ¶ 26. He alleges that due to his cognitive and memory deficits, generally, through 2008 and 2009, he requested reasonable accommodations from Kaiser, but it rejected those requests. *Id.* ¶¶ 34-42. In January 2009, Kaiser reduced Kennard's hours to part-time. *Id.* ¶¶ 39-40.

In June 2009, Kennard filed a complaint with the Equal Employment Opportunity Commission (EEOC) because Kaiser had not provided him reasonable accommodations at work. *Id.* ¶ 4. Also during this period, Kaiser placed reports from Kennard's medical providers (concluding he suffered from serious mood disorders and had a history of substance abuse) in his employment file "to retaliate and deny [him] employment benefits" and to help Kaiser "ignore" the issues related to his head injury. *Id.* ¶¶ 26, 48. On March 30, 2010, due to a discriminatory "neuro psych" report that claimed Kennard had confrontational behavior, drug addiction problems, and "inferior qualities," he was put on medical disability; this was done by Kaiser in order to discriminate against him and deny him health benefits. *Id.* ¶ 50.

On August 29, 2010, Kennard was transferred to the Medicare Finance department at Kaiser. *Id.* ¶¶ 53-54. From September 2010 to May 23, 2012, he alleges that his manager Debra Roland harassed him, including yelling at him, wrongfully accusing him of making mistakes, excluding him from a work conference, and telling him his work was unsatisfactory. *Id.*¶¶ 55, 63, 66. His co-workers also allegedly abused and harassed him during this time by treating him differently, questioning his programming skills, and speaking to him as though he could not understand complex concepts. *Id.* ¶¶ 56, 60. Kennard reported his co-workers' behavior to his supervisors on various occasions in 2011 and 2012 and complained to his manager about her treatment of him. *Id.* ¶¶ 77, 80-83. In January 2012, when Kennard inquired about a promotion, his manager responded by demeaning him and questioning the quality of his work. *Id.* ¶ 75. [2]

---

proceedings.
[2] In June 2011, Kennard was contacted by the EEOC for an investigation into his complaint, but he "closed" that complaint because at the time he believed his transfer to the Finance department was done in good faith and he didn't know about the neuro psych evaluation having been placed in

2

On March 25, 2012, Kennard filed a complaint of discrimination with the California Department of Fair Employment and Housing (DFEH), claiming that he was being harassed. *Id*. ¶ 88. Kennard continued to complain about harassment and retaliation internally at Kaiser through March and April 2012. *Id*. ¶¶ 88-92, 97. In early May 2012, Kennard communicated with the Disability Manager at Kaiser who sent him medical forms for his doctor to identify limitations, restrictions, and potential accommodations. *Id.* ¶¶ 99-100. He was diagnosed with Acute Stress Disorder, which he reported to Kaiser through the Disability Manager. *Id.* ¶¶ 102-103. He was not provided with any accommodations during that time. *Id.*

On May 21, 2012, Kennard had a serious panic attack at work due to harassment from his manager. *Id.* ¶104. Four days later, he was placed on disability. *Id.* ¶106. On May 30, 2012, Kennard filed a workers' compensation claim for his Acute Stress Disorder diagnosis. *Id.* ¶ 107. From June through August 2012, Kennard met with various individuals regarding his workers' compensation claim; he contends that Kaiser fabricated evidence in an attempt to claim Kennard's mental health issues arose prior to his work at Kaiser. *Id*. ¶¶ 110-130. Kaiser placed him on administrative leave with pay in August 2012. *Id*. ¶¶ 106, 119.

In February 2013, Kaiser told Kennard to report back to work but Kennard felt threatened and intimated. *Id*. ¶¶ 140-142. Instead of being forced to return to work, Kennard wanted Kaiser to place him in Total Temporary Disability. *Id*. ¶ 142, 145, 148. In March 2013, due to a panic attack related to Kaiser's demand that he return to work, a doctor placed Kennard on disability for a few weeks. *Id*. ¶¶ 152-153. Kaiser claimed that it did not receive the disability diagnosis from Kennard's doctor and demanded he return to work by March 13 or face dismissal. *Id*. ¶ 157. Throughout March 2013, Kaiser and Kennard communicated regarding whether Kennard was on disability or another type of leave. *Id*. ¶¶ 162-171. Kennard's disability leave was extended first through June 2013 then through September 2013, and then through December 2013. *Id*. ¶ 173, 192.

In April 2013, Kennard provided additional evidence regarding his claim of discrimination

---

his employment file which he alleges was subsequently used to violate the ADA and discriminate against him. *Id*. ¶ 59.

against Kaiser to DFEH, but DFEH closed his claim. *Id*. ¶¶ 174-175, 182. In May 2013, Kennard also submitted additional evidence to the EEOC, and the EEOC opened a substantial weight review in November 2013. *Id*. ¶¶ 182-183, 201. Throughout 2013, Kennard's workers' compensation claim continued to be processed, but Kennard felt that the amount of information and medical examinations requested were overwhelming; he felt Kaiser (and defense counsel) were abusing the process and violating HIPAA.[3] *Id*. ¶¶ 199, 203.

From December 2013 through May 14, 2014, Kennard was asked by Kaiser to provide information from a doctor regarding how to accommodate his disabilities appropriately. *Id.* ¶ 204, 212. On May 20, 2014, Kaiser terminated Kennard's employment because he did not return to work. *Id.* ¶ 214. In September 2014, the EEOC informed Kennard that, because of lack of evidence that he was discriminated against, its investigation would be closed, and he would be issued a right-to-sue notice. *Id*. ¶ 220. Kennard continued to communicate with the EEOC in 2014. *Id*. ¶ 224. In February 2015, the EEOC called Kennard asking if he wanted to amend his complaint with the "added charge of wrongful termination," but he could not return the call because his phone had been shut off. *Id*. ¶ 233.

On March 1, 2015, Kennard received his right-to-sue notice from the EEOC, but was unable to read it due to being overwhelmed and panicked. On March 9, 2015, he left messages with the EEOC because he wanted to amend his complaint; he did not understand then that, because the right-to-sue notice had been issued, he could not amend the complaint and continued to call the EEOC seeking guidance. *Id*. ¶ 235. On March 25, 2015, Kennard spoke to someone at the EEOC who explained to him that he could not reopen his EEOC complaint. *Id*. ¶ 238. On June 1, 2015, after reading his right-to-sue notice and learning he had 90 days to file a lawsuit following receipt of the notice, Kennard sent a letter to EEOC, asking the EEOC to reopen his case. *Id*. ¶ 240. He contacted an attorney with his "outdated Right-to-sue notice, [but] was unable to frame or process [his] legal questions, or fully understand the true nature of circumstances."

---

[3] The Health Insurance Portability and Accountability Act of 1996, HIPAA.

4

*Id.*[4]

Kennard filed a new charge regarding Kaiser's alleged discrimination against him with the EEOC on February 28, 2017. *See* Complaint (Compl.) at 3 (Dkt. No. 1); *see also* FAC ¶ 260. On April 2, 2017, the EEOC mailed him a notice of right-to-sue and a notice that the case was being dual-filed with the DFEH. Compl. at 3, 86-89.

Kennard filed this lawsuit on June 7, 2017. *Id.* at 1. On July 10, 2017, I granted Kennard leave to proceed *in forma pauperis*, but under 28 U.S.C. § 1915(e)(2)(B), I dismissed his complaint because it did not adequately allege a violation of federal law. July 2017 Order (Dkt. No. 7). As I explained in that Order, because Kennard did not file his EEOC charge until February 28, 2017, his federal employment discrimination claims (asserted under Title VII, the ADA, and GINA) could only be based on acts by Kaiser that occurred "on or after May 4, 2016 – 300 days before he filed his charge with the EEOC." *Id.* at 4. Because Kaiser's discriminatory conduct, as alleged by Kennard in his initial complaint, predated May 4, 2016, it appeared that Kennard's discrimination complaints were time-barred. I also noted that Kennard had also not pleaded any facts showing that his failure to file a timely EEOC charge was excused by equitable tolling. *Id*. I granted Kennard leave to amend in case he was able to allege discriminatory acts by Kaiser occurring after May 4, 2016 or facts supporting equitable tolling.

Kennard filed his FAC on August 18, 2017. In his FAC, as in his initial complaint, Kennard alleges that based upon the allegations outlined above, Kaiser (i) discriminated against him in his employment under Title VII (discrimination, hostile work environment, retaliation); (ii) violated the ADA, committed medical negligence, defamed him, and violated HIPAA through their acts of disability discrimination, failure to provide accommodations, and retaliation while he was employed with Kaiser, as well as the acts Kaiser took in his workers' compensation claim proceedings; and (iii) violated GINA, defamed and slandered him, and committed attorney

---

[4] During 2015 and through June 2016, Kennard pursued his workers' compensation claim through the Workers' Compensation Appeal Board (WCAB) and appealed the WCAB's denial of benefits to the California Court of Appeals and the California Supreme Court. *Id*. ¶¶ 241-256. Kennard complains that in the workers' compensation process Kaiser defended itself by misusing his medical records, which contained improper facts and diagnoses, and asserts that the WCAB opinion (available on the internet) defames and slanders him. *Id*. ¶¶ 253, 260.

5

negligence when Kaiser's doctors and attorneys impermissibly used false as well as accurate information from his medical files against him.

The relief he seeks in his FAC is: (i) reversal of the workers' compensation judgments; (ii) removal of his medical information from opposing counsel and defense experts (in the workers' compensation proceedings), and removal of his medical information from the files maintained by the WCAB, California Court of Appeals, and the California Supreme Court; (iii) destruction of his employment file at Kaiser; (iv) retirement and savings replaced; (v) healthcare coverage; (vi) donations to charities of his choice by Kaiser; and (vii) punitive damages.

Kaiser moves to dismiss and argues Kennard's FAC should be dismissed with prejudice because Kennard cannot point to any acts of discrimination that occurred after May 4, 2016 nor has he pleaded facts in support of equitable tolling. Motion (Dkt. No. 15).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Pro se pleadings must be held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, a complaint, or portion thereof, should be dismissed if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 554. "[A] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quotations omitted).

## DISCUSSION

### I. EMPLOYMENT DISCRIMINATION CLAIMS

#### A. Untimely EEOC Charge

Based on the facts alleged, Kennard's main claims are employment discrimination claims asserted under Title VII, the ADA, and GINA. Title VII prohibits employment discrimination based on race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2. Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). GINA prohibits discrimination against employees or applicants because of genetic information. 42 U.S.C. § 2000ff–1(a)(1). Each of these statutes is enforced by the EEOC. *See* 42 U.S.C. § 12117(a).

Before bringing employment discrimination claims under these statutes, a plaintiff must file a timely discrimination charge with the EEOC and obtain a notice of right-to-sue. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002) ("filing a timely charge is a prerequisite to having an actionable claim"). "In order to be timely, the plaintiff must file a discrimination charge with the EEOC within 180 days after the alleged violation." *Douglas v. California Dep't of Youth Authority*, 271 F.3d 812, 823 n.12 (9th Cir. 2001) (citing U.S.C. § 2000e-5(e)). If either the plaintiff or the EEOC files the plaintiff's charge with an appropriate state enforcement agency, the limitations period is extended to 300 days. *EEOC v. Comm. Office Prods. Co.*, 486 U.S. 107, 111 (1988).

Kennard filed his latest discrimination charge with the EEOC on February 28, 2017, which the EEOC then referred to the DFEH. FAC ¶ 260. Because Kennard's charge was filed with an appropriate state enforcement agency, the 300-day limitations period applies. Thus, to be timely Kennard's claims here must arise out of acts that took place on or after May 4, 2016 – 300 days before he filed his charge with the EEOC. They do not. Kennard's allegations against Kaiser regarding employment discrimination arise out of conduct that began as far back as 2008 and ended with his termination on May 20, 2014. He does not allege any discriminatory employment conduct within the applicable 300-day period. On the facts alleged, Kennard's charge was not timely filed, and his claims under Title VII, the ADA, and GINA are time-barred.

Kennard argues that given ongoing retaliatory conduct during the 300-day period prior to the filing of his charge, his February 2017 EEOC charge was timely. Specifically, Kennard contends that Kaiser's behavior during the prosecution of his appeal of the WCAB's denial of his workers' compensation claim to the California Supreme Court amounts to retaliation, violating his rights under the requisite employment discrimination statutes. But given the types of employment discrimination claims Kennard alleges —Title VII, ADA, GINA—the wrongdoing alleged must arise out of his employment relationship with Kaiser, either as an employee or an applicant. *See* 42 U.S.C. § 2000e-2(a) –(n) (detailing the employment practices that arise to actionable discrimination under Title VII); 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."); 42 U.S.C. § 2000ff-1(a)(1) (noting that employer cannot "fail or refuse to hire, or to discharge, any employee" or "limit, segregate, or classify the employees of the employer" based on genetic information). Kaiser's conduct while defending against Kennard's workers' compensation claim cannot support the types of employment discrimination claims he asserts. Kennard does not point to any other conduct by Kaiser during the applicable 300-day period.

### B. Equitable Tolling

A court may apply equitable doctrines that toll or extend the timely filing deadlines. *See*

*Nat'l R.R. Passenger Co. v. Morgan*, 536 U.S. 101, 122 (2002). Here, Kennard has not alleged any facts that would justify tolling.

Equitable tolling generally applies in "extraordinary circumstances beyond plaintiffs' control which made it impossible to file their claims on time." *Seattle Audubon Soc'y v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991). Courts should apply the doctrine of equitable tolling "sparingly." *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992). For example, application of the doctrine is appropriate when a deadline is missed because although a claimant attempted to comply his pleadings were defective, when an adversary tricked a claimant into letting a deadline expire, or when the EEOC's explanation of claim filing deadlines was clearly inadequate. *Id.* at 267–68. Equitable tolling is inappropriate, however, "where the claimant failed to exercise due diligence in preserving [her] legal rights," *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990), and the doctrine does not "extend to . . . a garden variety claim of excusable neglect." *Id*.

Prior to filing his untimely February 2017 EEOC charge, Kennard filed a charge with the EEOC in 2009, based on some of the employment discrimination he complains of in his FAC. Kennard, therefore, was familiar with the claim filing requirement for claims of employment discrimination. Kennard also admits he received a right-to-sue notice based on discriminatory conduct on the part of Kaiser in March 2015, after his employment had been terminated. He admits that he failed to read the notice prior to the expiration of the 90-day period to file a lawsuit. And when he did read the notice, he waited well over a year before filing a new charge. Taken together, Kennard's own allegations show that he was aware of the EEOC's processes and had a general idea of the mechanisms by which he could exercise his employment discrimination claims. He did not follow through with his obligations to preserve his rights under the employment discrimination statutes. Given this, if equitable tolling applied it would excuse Kennard's failure to diligently preserve his legal rights.

This is not how courts are intended to use the doctrine. *See Irwin*, 498 U.S. at 96. No facts alleged by Kennard suggest that the circumstances of this case mirror those in which courts have applied equitable tolling, such as an attempt to comply with the deadlines or being misled by the

EEOC or by Kaiser as to the deadlines for filing a charge or lawsuit. *See Scholar*, 963 F.2d at 267-28. If there is a theory that perhaps Kennard's vigorous efforts on his workers' compensation case kept him from abiding by the EEOC's deadlines, at most it would only establish excusable neglect, and that does not justify equitable tolling. *See Irwin*, 498 U.S. at 96.

Kennard's charge against Kaiser was not timely filed, and his claims of employment discrimination claim under Title VII, the ADA, and GINA are time-barred. I previously explained to Kennard what he needed to do to state a timely claim (plead facts of employment discrimination in or after May 2016 or facts supporting equitable tolling), Dkt. No. 7, and he was unable to do so. Granting Kennard leave for further amendment would be futile. His employment discrimination claims are DISMISSED with prejudice.

## II. HIPAA

Kennard appears to allege violations of HIPAA related to Kaiser's use of his medical information throughout the course of his employment and in his workers' compensation proceedings. To the extent that Kennard is alleging that Kaiser breached the confidentiality of his health records under HIPAA, his claim fails. There is no private right of action under HIPAA. *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007). HIPAA "specifically indicates" that the Secretary of Health and Human Services "shall pursue the action against an alleged offender, not a private individual." *Johnson v. Quander*, 370 F.Supp.2d 79, 100 (D.D.C. 2005). This means that only the government can bring a claim against a medical provider for violation of HIPAA. Kennard cannot.

## III. COMPLAINTS ABOUT WORKERS' COMPENSATION PROCEEDINGS

Though Kennard does not bring express claims related to the California administrative and state court proceedings on his workers' compensation claim, he dedicates a substantial amount of his FAC to detailing his dissatisfaction with aspects of those proceedings, including Kaiser's conduct in disputing his claim and the use of his medical history to deny him workers' compensation benefits. *See generally* FAC ¶¶ 215-256. Further, in his demand for relief, Kennard seeks to have the denial of his workers' compensation claim reversed and his medical information removed from the files and dockets of several entities, including the WCAB, California Court of

Appeal, and California Supreme Court. *Id.* at 62. But the remedies he seeks with respect to the workers' compensation proceedings cannot be secured through this case.

I do not have jurisdiction to reverse the conclusions of the WCAB, the California Court of Appeal, or the California Supreme Court. Under the *Rooker-Feldman* doctrine, district courts do not have jurisdiction to hear claims of this kind. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "[W]hen a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings in the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). Kennard's request that I overturn the judgment of the California state courts is the exact type of request that the *Rooker-Feldman* doctrine bars. I cannot provide such relief.

Regarding Kennard's complaints concerning the submission and use of his medical records in his workers' compensation case and that such use defamed, slandered, and otherwise injured him, I also am not able to offer him the relief that he seeks. Kaiser's use and submission of Kennard's medical records are subject to California's litigation privilege. The litigation privilege "grants absolute immunity from tort liability for communications made in relation to judicial proceedings." *Jarrow Formulas v. LaMarche*, 31 Cal. 4th 728, 737 (2003). "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). Given that Kennard's medical history records, by his own admissions, were used with respect to the workers' compensation proceedings (and nothing in the record suggests that they were not used to achieve the objects of those proceedings), Kaiser's submission and use of the records is protected by California's litigation privilege.

### IV. REMAINING STATE LAW CLAIM

Generously read, Kennard also asserts various state law claims, including concealment, defamation, slander, invasion of privacy, "false light," intrusion, attorney negligence, fraud, and fraud upon the court. FAC at 58-61. Having dismissed with prejudice all of Kennard's federal

11

claims, I decline to exercise supplemental jurisdiction over his remaining state law claims and DISMISS them without prejudice. *See* 28 U.S.C § 1367 (c) (a court may decline supplemental jurisdiction where it has dismissed claims over which it has original jurisdiction).

## CONCLUSION

For the reasons discussed above, I GRANT Kaiser's motion to dismiss and dismiss this case. Kennard's federal claims are DISMISSED WITH PREJUDICE. Kennard's remaining state law claims are DISMISSED WITHOUT PREJUDICE. The Clerk shall close this case.

**IT IS SO ORDERED.**

Dated: April 13, 2018

William H. Orrick
United States District Judge